1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   EUGENE WALKER,                    )      No. C 07-0644 MMC (PR)
                                        )
              Petitioner,               )      **ORDER DENYING**
12      vs.                             )      **PETITION FOR WRIT OF**
                                        )      **HABEAS CORPUS**
13   BEN CURRY, Warden,                 )
                                        )
14            Respondent.               )
     _____)
15

16                         **INTRODUCTION**

17          On January 31, 2007, petitioner Eugene Walker, a California state prisoner

18   proceeding pro se, filed, pursuant to 28 U.S.C. § 2254, the above-titled petition for a writ

19   of habeas corpus.  For the reasons stated herein, the petition is hereby DENIED.

20                         **BACKGROUND**

21          In 1981, petitioner and his accomplices assaulted and robbed four victims near a

22   housing project, using knives, sticks, and a gun.  (Ans. Ex. 5 at 10.)  The incident resulted

23   in the death of victim Jesus Garcia.  (Id. Ex. 7 at 1.)  In 1982, pursuant to a plea

24   agreement, petitioner pleaded guilty to one count of second degree murder and was

25   sentenced to fifteen years to life in prison; additionally, petitioner pleaded guilty to one

26   count of felony burglary in an unrelated case, for which he was sentenced to four years in

27   prison, to be served concurrently with his indeterminate life sentence.  (Id. Ex. 3 at 2-3.)

28   In January 2005, the Board found petitioner unsuitable for parole, on the ground he

"would pose an unreasonable risk of danger to society or a threat to public safety if released from prison."  (Ans. Ex. 5 at 54.)

In reaching its decision, the Board accepted the following facts taken from petitioner's 2001 probation report:

On 11/26/1981 at approximately 2:30 a.m. victim [Jesus] Garcia was in a car with his brother Nasario Garcia . . . and two friends. Lorendo    Leora . . . and Alfons Alfredo Gonzales . . . .  The car had run out of gas in an area of Olympic Boulevard near [the] Estrada Housing Project.  At that location, they were assailed by a group of young men described as Latinos and one black who used knives, sticks, and a gun to assault everyone in the car.  All the victims was [sic] pulled from the car and were beaten and robbed. Victim Gonzales surrendered his wallet containing 200 dollars, and two of the group then tried to stab him.  He managed to flee.  As he was running, he heard two shots fired and heard bullets hit the ground next to him and heard someone yell out, if you come back to your car, we'll kill you.  He sustained superficial abrasions to the abdomen.  Victim [Nasario] Garcia stated that he was pulled out of the car by two members of the group and stabbed in the back.  He surrendered his wallet containing 180 dollars, as well as a woman's wristwatch.  He received treatment for multiple lacerations, a stab wound to the face, extremities, and abdomen.  Victim Leora . . . confirmed that his wallet containing 80 dollars was taken.  He was hit across the face with a stick.  After he fell to the ground, he was beaten and kicked.  One of the assailants jumped on him, trying to break his leg.  He was treated for multiple contusions to his face, a fractured nose, and badly sprained ankle.  Victim Jesus Garcia was stabbed at the scene and died as a result of multiple stab wounds to the chest, one which severed an artery and one which penetrated his heart.  Investigation revealed that [petitioner], Johnny, Lumpy, Guhardo, and Frankie, Sleepy, Castro, members of the BNE gang and the Estrada Housing Project gang, committed the robbery and murder.  Investigating officers of the Hollenbeck Station noted that [petitioner], the only adult in the group, was the instigator in the murder and robbery.

(Id. at 10–12.)   Although petitioner admitted participating in the robbery and assault, he denied having stabbed or shot anyone and denied being involved in the murder.  (Id. at 12-14.)

At the parole hearing, the Board reviewed petitioner's record, including the circumstances of his commitment offense, his criminal history, and his behavior in prison. With respect to the commitment offense, the Board found the crime to be of the kind that would "shock the conscience of any people."  (Id. at 54.)  The Board noted that multiple victims not only were "attacked" but also "abused," and that the crime was carried out in a "dispassionate and calculated manner" and demonstrated a "total callous disregard for

one's fellow man." (Id. at 54–55.)

The Board also reviewed petitioner's criminal history.  Petitioner was first arrested at sixteen; his juvenile criminal history includes arrests for receiving stolen property, burglary, robbery, and grand theft, and he was declared a ward of the court.  The robbery, as the Board noted, was of a 24-year old boy, who, while lying on the ground, was reportedly kicked in the head by petitioner.  (Id. at 16.)  The commitment offense and a conviction for burglary comprise his adult criminal history.  (Id. at 16; Ex. 7 at 3-4.)

The Board also examined petitioner's behavior in prison.  The Board noted that petitioner had committed many disciplinary infractions, (id. at 25), ranging from petty violations, such as failure to report to work, to more serious offenses, such as assaulting an inmate and destruction of state property (id. Ex. 7 at 11–12), but also acknowledged that those disciplinary problems had occurred at a time when petitioner was young and immature (id. Ex. 5 at 32), and that petitioner had no disciplinary actions for the preceding seven years (id. at 31).  The Board made note of petitioner's accomplishments in various inmate programs, including self-help programs, and noted in particular petitioner's successful involvement with the Straight Life program, in which petitioner was working with at-risk youth.  (Id. at 26, 29-31.)  Petitioner's latest psychological report, as the Board noted, also was positive; the report assessed petitioner's potential for violence as "no more than the average citizen in the community," and further found petitioner had "learned lessons that many citizens in the community haven't learned," and thus, petitioner's "potential for violence [might] be even less than the average citizen." (Id. at 32.)

After a full hearing, during which all of the above evidence was considered, the Board found petitioner unsuitable for parole.  (Id. at 54.)  In response to the Board's decision, petitioner filed state habeas petitions, later denied, in the Los Angeles Superior Court, California Court of Appeal, and California Supreme Court.  (Id. Ex. 12, 14, 16.)

In 2007, petitioner filed the instant federal habeas petition, alleging that (1) the Board violated his right to due process because the decision to deny him parole was not

1 based on "some evidence," but rather was based on the unchanging facts of his

2 commitment offense,[1] and (2) the Board violated his plea agreement, and thus his right to

3 due process, by denying him parole.

**DISCUSSION**

**A.    Standard of Review**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a

person in custody pursuant to the judgment of a State court only on the ground that he is

in custody in violation of the Constitution or laws or treaties of the United States."  28

U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence

on the basis of a claim that was reviewed on the merits in state court unless the state

court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court of the United States; or (2) resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412–13

(2000).  A federal court must presume the correctness of the state court's factual findings.

28 U.S.C. § 2254 (e)(1).  Habeas relief is warranted only if the constitutional error at

issue had a "substantial and injurious effect or influence in determining the jury's

verdict."  Penry v. Johnson, 532 U.S. 782, 795 (2001) (internal quotation and citation

omitted).

The state court decision implicated by 2254(d) is the "last reasoned decision" of

the state court.  See Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991); Barker v.

Fleming, 423 F.3d 1085, 1091–92 (9th Cir. 2005).  Where there is no reasoned opinion

from the highest state court to have considered the petitioner's claims, the district court

looks to the last reasoned state court opinion, which, in this instance, is the opinion of the

---

[1] This claim is encompassed by Claims 1 and 2 of the petition.

1   Los Angeles Superior Court.  (Ans. Ex.  12); <u>see</u> <u>Nunnemaker</u>, 501 U.S. at 801–06;

2   <u>Shackleford v. Hubbard</u>, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

3   **B.     Petitioner's Claims**

4        **1.     Sufficiency of Evidence**

5        Petitioner claims the Board violated his due process rights by denying him parole

6   without "some evidence" to support the decision.  The superior court rejected the claim,

7   finding there was some evidence to support the Board's decision, in particular, the facts

8   of the commitment offense, petitioner's institutional misconduct, petitioner's unstable

9   social history and his criminal history, which record reflected a pattern of violence and, as

10  the Board noted, a "fail[ure] to profit from society's previous attempts to correct [his]

11  criminality." (<u>See</u> Ans. Ex. 12; Ex. 5 at 54–57.)

12       A denial of parole complies with due process provided there is "some evidence" to

13  support the parole board's decision.  A parole board's decision deprives a prisoner of due

14  process if such decision is not supported by "some evidence in the record," or is

15  otherwise "arbitrary." <u>See</u> <u>Superintendent v. Hill</u>, 472 U.S. 445, 454–55 (1985); <u>Sass v.</u>

16  <u>California Bd. of Prison Terms</u>, 461 F.3d 1123, 1129 (9th Cir. 2006).  Additionally, the

17  evidence underlying the parole board's decision must have "some indicia of reliability."

18  <u>See</u> <u>McQuillion v. Duncan</u>, 306 F.3d 895, 904 (9th Cir. 2002).  Accordingly, if a parole

19  board's determination with respect to parole suitability is to satisfy due process, such

20  determination must be supported by some evidence having some indicia of reliability.

21  <u>Rosas v. Nielsen</u>, 428 F.3d 1229, 1232 (9th Cir. 2005).

22       Additionally, in assessing whether there is "some evidence" to support the Board's

23  denial of parole, this Court must consider the regulations that guide the Board in making

24  its parole suitability determinations.  Pursuant to such regulations, "[t]he panel shall first

25  determine whether the life prisoner is suitable for release on parole[;] [r]egardless of the

26  length of time served, a life prisoner shall be found unsuitable for and denied parole if in

27  the judgment of the panel the prisoner will pose an unreasonable risk of danger to society

28  if released from prison."  15 Cal. Code Regs. § 2402(a).  The regulations enumerate

various circumstances tending to indicate whether or not an inmate is suitable for parole. Id., § 2402(c)–(d).[2] One circumstance tending to show an inmate's unsuitability is that the crime was committed in an "especially heinous, atrocious or cruel manner." Id., § 2402(c). Two factors that the parole authority may consider in determining whether such a circumstance exists are whether "[t]he offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Id., § 2402(c)(1)(D) & (E). In addition to these factors, the Board is to consider "all relevant, reliable information available." Id., § 2402(b).

It is now established under California law that the task of the Board is to determine whether the prisoner would be a danger to society if he or she were paroled. See In re Lawrence, 44 Cal. 4th 1181 (2008). Consequently, the constitutional "some evidence" requirement is that there exists some evidence that the prisoner constitutes such a danger, not simply that there exists some evidence of one or more of the factors listed in the regulations as considerations appropriate to the parole determination. Id. at 1205–06.

In that regard, however, a parole authority's continued reliance on the circumstances of the commitment offense as the sole basis for denying parole can, over time, raise due process concerns. See Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003). "[I]n some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due

---

[2] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Id. § 2402(d).

1  process, given the liberty interest in parole that flows from the relevant California

2  statutes." Irons v. Carey, 505 F.3d 846, 854 (9th Cir. 2007).

3        Here, the Court cannot find the state court was unreasonable in concluding there is

4  some evidence to support the Board's decision that petitioner would pose a danger to

5  society if released.  The record contains evidence to support the Board's finding,

6  including the circumstances of the commitment offense, petitioner's criminal history, and

7  his prison disciplinary infractions.

8        First, evidence exists to support the Board's determination that the circumstances

9  of the commitment offense indicated petitioner presented a risk of danger to society if

10  released.  The record contains evidence that the commitment offense was committed in an

11  "especially heinous, atrocious or cruel manner," a circumstance tending to show parole

12  unsuitability, see 15 Cal. Code Regs. § 2402(c), in that the offense would "shock the

13  conscience of any person," and was "carried out in a dispassionate and calculated

14  manner" . . . . and "in a manner that demonstrate[d] a total callous disregard for one's

15  fellow man."  (Ans. Ex. 5 at 54–55.)   In particular, petitioner and his accomplices

16  targeted a group of stranded victims and attacked them with knives, sticks, and a gun.

17  Significantly, even after the victims complied with petitioner and his accomplices'

18  demands for money, the vicious attack continued, resulting in the death of Jesus Garcia,

19  as well as serious injury to other victims.  Under such circumstances, the Board's

20  description of the offense as "dispassionate" and a "total callous disregard for one's

21  fellow man" is not unreasonable.  While at some point, the circumstances of the

22  commitment offense may cease to have probative value, they constitute, at present, some

23  evidence of petitioner's dangerousness.

24        Moreover, petitioner's institutional behavior and his criminal history constitute

25  additional evidence of petitioner's unsuitability for parole.  While in prison, petitioner

26  committed at least thirty disciplinary infractions.  (Ans. Ex. 7.)  Prior to his current

27  incarceration, petitioner had acquired a substantial criminal history, including violent

28  offenses.  Because the Board relied on such additional evidence, petitioner's claim that

1    the Board's decision violated his right to due process by relying solely on the unchanging
2    circumstances of the commitment offense is without merit.

3        Accordingly, petitioner is not entitled to habeas relief on this claim.

4        **2.    Plea Agreement**

5        Petitioner claims respondent, by denying him parole, violated his rights under his
6    plea agreement.  (Pet. at 24.)  The plea agreement, petitioner contends, promised
7    petitioner he would be released on parole if he "met the suitability criteria, [and] served
8    sufficient time per the Board of Prison Terms Matrix."  (Id. at 25.)

9        "[D]ue process rights conferred by the federal constitution allow [a defendant] to
10   enforce the terms of [his] plea agreement."  Brown v. Poole, 337 F.3d 1155, 1159 (9th
11   Cir. 2003).  Plea agreements are construed using the ordinary rules of contract
12   interpretation.  See id. at 1159.  "[W]hen a plea rests in any significant degree on a
13   promise or agreement of the prosecutor, so that it can be said to be a part of the
14   inducement or consideration, such promise must be fulfilled."  See Santobello v. New
15   York, 404 U.S. 257, 262 (1971); see also Brown, 337 F.3d at 1159 (holding prosecutor's
16   promise, specifically, that petitioner would be released on parole after serving half the
17   minimum sentence discipline-free, was binding).

18       Here, petitioner's claims are without merit.  Because the Board found petitioner
19   unsuitable for parole, the first of the provisions of the plea agreement on which petitioner
20   relies was not implicated, and therefore respondent did not violate its terms.  Moreover,
21   the Board is under no duty to apply the sentencing matrix once it has determined a
22   prisoner is unsuitable for parole.  In Re Dannenberg, 34 Cal. 4th 1069, 1071 (2005).

23       Accordingly, petitioner is not entitled to habeas relief on this claim.

24                            **CONCLUSION**

25       Because the record contains some evidence to support the Board's determination
26   that petitioner would present an unreasonable risk of danger to society if released, and
27   because petitioner has made an insufficient showing as to his entitlement to relief on his
28   other claims, the Court finds the state court's determination was neither contrary to nor an

1   unreasonable application of clearly established Supreme Court precedent, nor can the

2   Court say it was based on an unreasonable determination of the facts.

3          Accordingly, the petition for a writ of habeas corpus is hereby DENIED.

4          The Clerk shall enter judgment in favor of respondent and close the file.

5          **IT IS SO ORDERED.**

6   DATED: December 18, 2009

7                                      _____
                                       MAXINE M. CHESNEY
                                       United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28